**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma (JD-7697)
Katrina Blumenkrants (KB-9620)
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tel: (973) 623-3000

Attorneys for Plaintiff
[Additional counsel on signature page]

RECEIVED
MAR - 4 2004
AT 8:30 5:37 P M
WILLIAM T. WALSH
CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOSEPHINE LOGAN, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

LORD ABBETT & CO. LLC, TRACIE E. AHERN, JOAN A. BINSTOCK, DANIEL E. CARPER, ROBERT S. DOW, HOWARD E. HANSEN, PAUL A. HILSTAD, LAWRENCE H. KAPLAN, ROBERT G. MORRIS, A. EDWARD OBERHAUS, III, EDWARD K. VON DER LINDE, MICHAEL BROOKS, ZANE E. BROWN, PATRICK BROWNE, JOHN J. DICHIARDO, SHOLOM DINSKY, LESLEY-JANE DIXON, KEVIN P. FERGUSON, ROBERT J. GERBER, MICHAEL S. GOLDSTEIN, MICHAEL A. GRANT, CHARLES HOFER, W. THOMAS HUDSON, JR., CINDA HUGHES, ELLEN G. ITSKOVITZ, MAREN LINDSTROM, ROBERT A. LEE, GREGORY M. MACOSKO, THOMAS MALEON, CHARLES MASSARE, JR., STEPHEN J. MCGRUDER, PAUL MCNAMARA, ROBERT J. NOELKE, R. MARK PENNINGTON, WALTER PRAHL, MICHAEL ROSE, ELI M. SALZMANN, DOUGLAS B. SIEG, RICHARD SIELING, MICHAEL T. SMITH, RICHARD SMOLA, DIANE TORNEJAL, CHRISTOPHER J. TOWLE,

**Civil Action No.** 04-1055 (WJM)

**CLASS ACTION COMPLAINT**
**<u>JURY TRIAL DEMANDED</u>**

MARION ZAPOLIN, ROBERT S. DOW, E. THAYER BIGELOW, WILLIAM H.T. BUSH, ROBERT B. CALHOUN, JR., STEWART S. DIXON, FRANKLIN W. HOBBS, C. ALAN MACDONALD, THOMAS J. NEFF, JAMES F. ORR III, and DOES 1-100, )

Defendants, )

LORD ABBETT AFFILIATED FUND, LORD ABBETT ALL VALUE FUND, LORD ABBETT ALPHA SERIES FUND, LORD ABBETT AMERICA'S VALUE FUND, LORD ABBETT BALANCED SERIES FUND, LORD ABBETT DEVELOPING GROWTH FUND, LORD ABBETT GLOBAL EQUITY FUND, LORD ABBETT GROWTH OPPORTUNITIES FUND, LORD ABBETT INTERNATIONAL CORE EQUITY FUND, LORD ABBETT INTERNATIONAL OPPORTUNITIES FUND, LORD ABBETT LARGE-CAP GROWTH FUND, LORD ABBETT LARGE-CAP RESEARCH FUND, LORD ABBETT LARGE-CAP VALUE FUND, LORD ABBETT MID-CAP VALUE FUND, LORD ABBETT SMALL-CAP BLEND FUND, LORD ABBETT SMALL-CAP VALUE FUND, LORD ABBETT BOND-DEBENTURE FUND, LORD ABBETT CALIFORNIA FUND, LORD ABBETT CONNECTICUT FUND, LORD ABBETT CORE FIXED INCOME FUND, LORD ABBETT CONVERTIBLE FUND, LORD ABBETT FLORIDA FUND, LORD ABBETT GEORGIA FUND, LORD ABBETT GLOBAL INCOME FUND, LORD ABBETT HAWAII FUND, LORD ABBETT HIGH YIELD FUND, LORD ABBETT INSURED INTERMEDIATE FUND, LORD ABBETT LIMITED DURATION USG& GSE FUND, LORD ABBETT MICHIGAN FUND, LORD ABBETT MINNESOTA FUND, LORD ABBETT MISSOURI FUND, LORD ABBETT NATIONAL TAX-FREE FUND, LORD ABBETT NEW JERSEY FUND, LORD ABBETT NEW YORK FUND, LORD ABBETT PENNSYLVANIA FUND, LORD ABBETT TEXAS FUND, LORD ABBETT TOTAL )

RETURN FUND, LORD ABBETT USG &GSE )
FUND, LORD ABBETT USG & GSE MONEY )
MARKET FUND, and LORD ABBETT )
WASHINGTON FUND, (COLLECTIVELY THE )
"LORD ABBETT FUNDS"), )
)
Nominal Defendants, )

Plaintiff, Josephine Logan ("Plaintiff"), residing at 3603 Lansdowne Place, St. Louis, Missouri 63109, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the Lord Abbett Family of Mutual Funds and advisories about the funds, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of a class (the "Class") of all purchasers, redeemers and holders of the Lord Abbett Funds (as defined above), who purchased, redeemed, held, or otherwise acquired shares between February 6, 1999 and November 17, 2003 (the "Class Period"), seeking to pursue remedies under Sections 34(b), 36(b) and 48(a) of the Investment

Company Act of 1940, 15 U.S.C. §§80a-33(b), 80a-35(a) and (b) and 80a-47(a), Sections 206 and 215 of the Investment Advisers Act, 15 U.S.C. §§80b-6 and 80b-15, and common law.

**JURISDICTION AND VENUE**

2. The claims, asserted herein arise under and pursuant to Sections 34(b), 36(b) and 48(a) of the Investment Company Act of 1940, 15 U.S.C. §§80a-33(b), 80a-35(a) and (b) and 80a-47(a), Sections 206 and 215 of the Investment Advisers Act, 15 U.S.C. §§80b-6 and 80b-15, and common law.

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 44 of the Investment Company Act, 15 U.S.C. §80a-43; Section 214 of the Investment Advisers Act,15 U.S.C. §80b-14; and 28 U.S.C. § 1391(b).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6. Plaintiff Josephine Logan bought and holds shares of the Lord Abbett Affiliated Fund during the Class Period and has suffered damages as a result of the wrongful acts of defendants as alleged herein.

7. Defendant Lord Abbett & Co. LLC ("Lord Abbett") is a Delaware limited liability company engaged in the business of money management. Lord Abbett manages about 45 mutual

fund portfolios. Lord Abbett has its principal place of business at 90 Hudson Street, Jersey City, New Jersey. Lord Abbett is registered as an investment adviser under the Investment Advisers Act and had the ultimate responsibility for overseeing the day-to-day management of the Lord Abbett Funds. Investment advisory fees payable to Lord Abbett are calculated as a percentage of fund assets under management.

8. During the Class Period, the following defendants served as partners of Lord Abbett: Tracie E. Ahern, Joan A. Binstock, Daniel E. Carper, Robert S. Dow, Howard E. Hansen, Paul A. Hilstad, Lawrence H. Kaplan, Robert G. Morris, A. Edward Oberhaus, III, Edward K. von Der Linde, Michael Brooks, Zane E. Brown, Patrick Browne, John J. Dichiardo, Sholom Dinsky, Lesley-Jane Dixon, Kevin P. Ferguson, Robert J. Gerber, Michael S. Goldstein, Michael A. Grant, Charles Hofer, W. Thomas Hudson, Jr., Cinda Hughes, Ellen G. Itskovitz, Maren Lindstrom, Robert A. Lee, Gregory M. Macosko, Thomas Maleon, Charles Massare, Jr., Stephen J. Mcgruder, Paul Mcnamara, Robert J. Noelke, R. Mark Pennington, Walter Prahl, Michael Rose, Eli M. Salzmann, Douglas B. Sieg, Richard Sieling, Michael T. Smith, Richard Smola, Diane Tornejal, Christopher J. Towle, Marion Zapolin. These individuals are referred to as the "Director Defendants." They too have a their principal place of business located at 90 Hudson Street, Jersey City, New Jersey 07302.

9. Defendants Robert S. Dow ("Dow"), E. Thayer Bigelow ("Bigelow"), William H.T. Bush ("Bush"), Robert B. Calhoun, Jr. ("Calhoun"), Stewart S. Dixon ("Dixon"), Franklin W. Hobbs ("Hobbs"), C. Alan MacDonald ("MacDonald"), Thomas J. Neff ("Neff"), and James F. Orr III ("Orr") were directors or trustees of the Lord Abbett Funds.

10. Defendant Dow is the Managing Partner and Chief Investment Officer of Lord Abbett and is an "interested person" as defined in the Investment Company Act.

11. Defendants Does 1-100 were Lord Abbett directors during the Class Period, and any other wrongdoers later discovered, whose identities have yet to be ascertained, which will be determined during the course of plaintiff's counsel's ongoing investigation.

12. The Lord Abbett directors referred to in ¶ 9 and the Does 1-100 are collectively referred to as the "Director Defendants."

13. Nominal Defendants, the Lord Abbett Funds, as identified in the caption, are open-ended management companies consisting of the capital invested by mutual fund shareholders, each having a board of directors charged with representing the interest of the shareholders in one or a series of the funds. The Lord Abbett Funds are named as nominal defendants to the extent that they may be deemed necessary and indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and to the extent necessary to ensure the availability of adequate remedies.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action as a federal class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class (the "Class"), consisting of all purchasers, redeemers and holders of the mutual fund shares that are the subject of this lawsuit, who purchased, redeemed, held, or otherwise acquired shares between February 6, 1999 and November 17, 2003, inclusive, (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

16. Plaintiff's claims are typical of the claims of the members of the Class, because plaintiffs and all of the Class members sustained damages arising out of defendants' wrongful conduct complained of herein.

17. Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel who are experienced and competent in class actions and securities litigation.

18. A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

19. Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) Whether defendants breached their fiduciary duties by engaging in fraudulent activity, and;

(c) Whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### The Director Defendants Breached Their Fiduciary Duties

20. This class action concerns a fraudulent scheme and course of conduct which was intended to, and indeed did, benefit mutual funds and their advisors at the expense of mutual fund investors. In connection therewith, defendants violated their fiduciary duties to their customers in return for substantial fees and other income for themselves and their affiliates.

21. Lord Abbett public filings state that the board of directors for each Lord Abbett Fund is responsible for the management and supervision of reach respective fund. In the Statement of Additional Information ("SAI"), Lord Abbett stated:

> The Board of Directors is responsible for the management of the business and affairs of the Fund in accordance with the laws of the State of Maryland. The Board appoints officers who are responsible for the day-to-day operations of the Fund and who execute policies authorized by the Board. As discussed fully below, the Board also approves an investment adviser to the Fund and continues to monitor the cost and quality of the services provided by the investment adviser, and annually considers whether to renew the contract with the adviser.

22. Additionally, in its SAI, Lord Abbett, under the section heading "Approval of Advisory Contract," stated:

> At a meeting on December 12, 2002, the Board of Directors of the Fund, including all its Directors who are not interested persons of the Fund (the "Board"), considered whether to approve the continuation of the existing management agreement between the

> Fund and Lord Abbett. In addition to the materials the Board had reviewed throughout the course of the year, the Board received materials relating to the management agreement before the meeting and had the opportunity to ask questions and request further information in connection with their consideration.

23. In truth and in fact, the Lord Abbett Funds board of trustees was captive to and controlled by Lord Abbett, who prevented the Lord Abbett Fund board members from fulfilling their statutory and fiduciary duties to manage and supervise the Lord Abbett Funds, approve all significant agreements, and other wise take reasonable steps to prevent Lord Abbett from skimming Lord Abbett assets.

24. The director directors oversee many of the Lord Abbett funds. Such oversight makes its impossible for them to properly perform their supervisory and monitoring functions. Thus, the Director Defendants functioned to falsely approve Lord Abbett's improper conduct.

25. In their duties as investment advisors for the Lord Abbett Funds, the Lord Abbett charged the Lord Abbett Funds a variety of fees, each of which' was calculated as a percentage of assets under management.

26. Here, however and as a result of the Director Defendants' dependence on the investment management company, and its failure to properly manage Lord Abbett, millions of dollars in Lord Abbett Funds assets were transferred through fees payable from Lord Abbett Funds assets to Lord Abbett who offered no benefit to fund investors. Such acts by the defendant was a clear breach of their fiduciary duties to the Lord Abbett Funds investors.

27. Plaintiff and other members of the Class never knew, nor could they have known, from reading the fund prospectuses or otherwise, of the extent to which Lord Abbett were using

so-called 12b-1 fees, directed brokerage (as defined below) and commissions to improperly siphon assets from the funds.

**Rule 12b-1 Marketing Fees Were Used For Improper Purposes By Lord Abbett**

28. Rule 12b-1, promulgated by the SEC pursuant to the Investment Company Act, prohibits mutual funds from directly or indirectly distributing or marketing their own shares unless certain enumerated conditions set forth in Rule 12b-1 are met. The Rule 12b-1 conditions, among others, are that (1) payments for marketing must be made pursuant to a written plan "describing all material aspects of the proposed financing of distribution;"(2) all agreements with any person relating to implementation of the plan must be in writing; (3) the plan and any related agreements must be approved by a vote of the majority of the board of directors; and (4) the board of directors must review, at least quarterly, "a written report of the amounts so expended and the purposes for which such expenditures were made." Additionally, the directors "have a duty to request and evaluate, and any person who is a party to any agreement with such company relating to such plan shall have a duty to furnish, such information as may reasonably be necessary to an informed determination, of whether the plan should be implemented or continued." The directors may continue the plan "only if the board of directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment, and in light of their fiduciary duties under state law and section 36(a) and (b) (15 U.S.C. 80a-35(a) and (b)) of the Act that there is a reasonable likelihood that the plan will benefit the company and its shareholders."

29. The exceptions to the Section 12b prohibition on mutual fund marketing were enacted in 1980 under the theory that the marketing of mutual funds, all things being equal,

should be encouraged because increased investment in mutual funds would presumably result in economies of scale the benefits of which would be shifted from fund managers to investors. During the Class Period, the Director Defendants authorized, and Lord Abbett collected, millions of dollars in purported Rule 12b- 1 marketing and distribution fees.

30. However, the purported Rule 12b-1 fees charged to Lord Abbett Funds investors were highly improper because the conditions of Rule 12b-1 were not met. As detailed herein, there was no "reasonable likelihood" that the plan would benefit the company and its shareholders. Rather, Lord Abbett Funds management and other fees increased during the Class Period. By turning a blind eye to the increasing fees, the Director Defendants knowingly or recklessly allowed Lord Abbett to increase the fund size while at the same time reduce the fund's liquidity and performance.

31. Had the Director Defendants done their job and reviewed written reports of the amounts expended pursuant to the Lord Abbett Funds Rule 12b-1 Plan, and the information pertaining to. agreements entered into pursuant to the Rule 12b-1 Plan on a quarterly basis as required, the Lord Abbett Fund investors would have had to bear the result of the Investment Advisors reckless acts, which only acted to harm existing Lord Abbett Funds shareholders.

32. Additionally, the Director Defendants also, in violation of their fiduciary responsibilities to the existing Lord Abbett Funds shareholders, by allowing Lord Abbett to induce brokers to breach their duties of loyalty to their prospective Lord Abbett Funds investors.

33. All of this could have been prevented, had the Director Defendants reviewed, as required, Lord Abbett Funds Rule 12b-1 Plan.

34. With respect to Lord Abbett's Closed Funds, the 12b-1 fees could not possibly have been used to market and distribute them. Nevertheless, Lord Abbett received Rule 12b-1 fees charged to the Closed Funds.

35. As set forth below, in violation of Rule 12b-1 and Section 28(e) of the Securities Exchange Act, defendants made additional undisclosed payments to brokers, in the form of excess commissions, that were not disclosed or authorized by the Lord Abbett Funds Rule 12b-1 plan.

**Lord Abbett Charged Their Overhead To Lord Abbett Funds Investors And Secretly Paid Excessive Commissions To Brokers To Steer Clients To Lord Abbett Funds**

36. Investment advisers routinely pay broker commissions on the purchase and sale of fund securities, and such commissions may properly be used to purchase certain other services from brokers as well. Specifically, the Section 28(e) "safe harbor" provision of the Securities Exchange Act carves out an exception to the rule that requires investment management companies to obtain the best possible execution price for their trades. Section 28(e) provides that fund managers shall not be deemed to have breached their fiduciary duties "solely by reason of his having caused the account to pay a ... broker. .. in excess of the amount of commission another ... broker. .. would have charged for effecting the transaction, if such person determined in goodfaith that the amount of the commission is reasonable in relation to the value of the brokerage and research services provided." 15 U.S.C. §28(e). In other words, funds are allowed to include "commissions" payment for not only purchase and sales execution, but also for specified services, which the SEC has defined to include, "any service that provides lawful and appropriate assistance to the money manager in the performance of his investment decision-making responsibilities." The commission amounts charged by brokerages to investment advisers in excess of the purchase and sale charges are known within the industry as "Soft Dollars."

37. The actions of Lord Abbett during the Class Period were clearly a violation of the Section 28(e) safe harbor. Lord Abbett used Soft Dollars to pay overhead costs thus charging Lord Abbett Funds investors for costs not covered by the Section 28(e) safe harbor. Such actions on the part of Lord Abbett were inconsistent with their fiduciary responsibilities to the existing Lord Abbett Funds shareholders.

38. In addition to using Soft Dollars to pay over costs, Lord Abbett paid excessive commissions to broker dealers on top of any real Soft Dollars so that they would induce more clients to purchase Lord Abbett Funds and directed brokerage business to firms that favored Lord Abbett Funds. Such payments and directed-brokerage payments were used to fund sales contests and other undisclosed financial incentives to sell Lord Abbett Funds. These incentives created an undisclosed conflict of interest and caused brokers to push clients to Lord Abbett Funds regardless of the funds' investment quality relative to other investment alternatives, thereby breaching brokers' duties of loyalty. By paying the excessive brokerage commissions, Lord Abbett additionally violated Section 12 of the Investment Company Act, because such payments were not made pursuant to a valid Rule 12b-1 plan.

39. The excessive commissions did not fund any services that benefited the Lord Abbett Funds shareholders. This practice materially harmed Plaintiff and other members of the Class from whom the Soft Dollars and excessive commissions were taken.

40. Additionally, Lord Abbett Funds, similar to other members of the industry, have a practice of charging lower management fees to institutional clients than to ordinary mutual fund investors through their mutual fund holdings. This discriminatory treatment cannot be justified by any additional services to the ordinary investor and is a further breach of fiduciary duties.

**THE SEC'S NOVEMBER 17, 2003 ANNOUNCEMENT**

41. On November 17, 2003, these practices began to come to light when the SEC issued a press release (the "November 17 SEC Release") in which it announced a $50 million settlement of an enforcement action against Morgan Stanley Dean Witter relating to improper mutual fund sales practices. The Lord Abbett Funds were subsequently identified as one of the mutual fund families that Morgan Stanley brokers were paid to push. In this regard, the release announced:

> [T]he institution and simultaneous settlement of an enforcement action against Morgan Stanley DW Inc. (Morgan Stanley) for failing to provide customers important information relating to their purchases of mutual fund shares. As part of the settlement, Morgan Stanley will pay $50 million in disgorgement and penalties, all of which will be placed in a Fair Fund for distribution to certain Morgan Stanley customers. Stemming from the SEC's ongoing industry-wide investigation of mutual fund sales practices, this inquiry uncovered two distinct, firm-wide disclosure failures by Morgan Stanley. The first relates to Morgan Stanley's "Partners Program" and its predecessor, in which a select group of mutual fund complexes paid Morgan Stanley substantial fees for preferred marketing of their funds. To incentivize its sales force to recommend the purchase of shares in these "preferred" funds, Morgan. Stanley paid increased compensation to individual registered representatives and branch. managers on sales of those funds' shares. The fund complexes paid these fees in cash or in the form of portfolio brokerage commissions.

42. The November 17 SEC release further stated:

> The Commission's Order finds that this conduct violated Section 17(a)(2) of the Securities Act of 1933 and Rule l0b-10 under the Securities Exchange Act of 1934. Section 17(a)(2) prohibits the making of materially misleading statements or omissions in the offer and sale of securities. Rule 1Ob-10 requires broker dealers to disclose the source and amount of any remuneration received from third parties in connection with a securities transaction. The Order also finds that the conduct violated NASD Rule 2830(k), which prohibits NASD members from favoring the sale of mutual fund

> shares based on the receipt of brokerage commissions. Stephen M. Cutler, Director of the Commission's Division of Enforcement, said: "Unbeknownst to Morgan Stanley's customers, Morgan Stanley received monetary incentives -- in the form of "shelf space" payments - to sell particular mutual funds to its customers. When customers purchase mutual funds, they should understand the nature and extent of any conflicts of interest that may affect the transaction." Morgan Stanley has agreed to settle this matter, without admitting or, denying the findings in the Commission's Order. As part of the settlement, Morgan Stanley will pay $25 million in disgorgement and prejudgment interest. In addition, Morgan Stanley will pay civil penalties totaling $25 million.
>
> ***
>
> In addition, Morgan Stanley has undertaken to, among other things, (1) place on its website disclosures regarding the Partners Program; (2) provide customers with a disclosure document that will disclose, among other things, specific information concerning the Partners Program, and the differences in fees and expenses connected with the purchase of different mutual fund share classes. Finally, the Commission's Order censures Morgan Stanley and orders it to cease-and-desist from committing or causing any violations of Section 17(a)(2) of the Securities Act of 1933 and Rule l0b-10 under the Securities Exchange Act of 1934.
>
> The NASD also announced today a settled action against Morgan Stanley for violations of NASD Rule 2830(k) arising from the Partners Program and its predecessor.

43. On November 18, 2003, the Washington Post published an article under the headline, "Morgan Stanley Settles with SEC, NASD," which stated "Morgan said yesterday that companies in its 'Partners Program' included ... Lord Abbett Funds ...," among others.

44. On January 14, 2003, The Wall Street Journal published an article under titled: "SEC Readies Cases On Mutual Funds' Deals With Brokers." The article, citing "a person familiar with the investigation," stated that the SEC is "close to filing its first charges against mutual fund

companies related to arrangements that direct trading commissions to brokerage firms that favor those fund companies' products." The article stated in pertinent part as follows:

> The SEC has been probing the business arrangements between fund companies and brokerage firms since last spring. It held a news conference yesterday to announce it has found widespread evidence that brokerage firms steered investors to certain mutual funds because of payments they received from fund companies or their investment advisers as part of sales agreements. Officials said the agency has opened investigations into eight brokerage firms and a dozen mutual funds that engaged in a longstanding practice known as "revenue sharing." Agency officials said they expect that number to grow as its probe expands. They declined to name either the funds or the brokerage firms. The SEC said payments varied between 0.05% and 0.04% of sales and up to 0.25% of assets that remained invested in the fund.
>
> ***
>
> People familiar with the investigation say regulators are looking into examples of conflict of interest when fund companies use shareholder money to cover costs of sales agreements instead of paying the sales costs themselves out of the firm's own pockets. The boards of funds, too, could be subject to scrutiny for allowing shareholders' commission dollars to be used for these sales agreements. In other cases, the SEC is probing whether funds violated policies that would require costs associated with marketing a fund to be included in a fund's so-called 12b-1 plan.

**The Prospectuses Were Materially False And Misleading**

45. Plaintiff and other members of the Class were entitled to, and did receive, one of the prospectuses, pursuant to which the Lord Abbett Funds shares were offered, each of which contained substantially the same materially false and misleading statements and omissions regarding l2b-1 fees, commissions and Soft Dollars.

46. The SAI, referred to in certain of the Lord Abbett Funds' prospectuses and available to the investor upon request, stated as follows with respect to Soft Dollars:

> Lord Abbett Distributor may, for specified periods, allow dealers to retain the full sales charge for sales of shares or may pay an additional concession to a dealer who sells a minimum dollar amount of our shares and/or shares of other Lord Abbett-sponsored funds. In some instances, such additional concessions will be offered only to certain dealers expected to sell significant amounts of shares. Additional payments may be paid from Lord Abbett Distributor's own resources or from distribution fees received from the Fund and may be made in the form of cash or, if permitted, non-cash payments. The non-cash payments may include business seminars at Lord Abbett's headquarters or other locations, including meals and entertainment, or merchandise. The cash payments may include payment of various business expenses of the dealer.

47. The Prospectuses failed to disclose and misrepresented, *inter alia*, the following material and adverse facts: (1) that Lord Abbett permitted payments from fund assets of excessive commissions to brokers to induce them to push Lord Abbett Funds; (2) that such payments were a clear breach of Lord Abbett's fiduciary duties, violated Section 12b of the Investment Company Act, and were not protected by the safe harbor provisions of Section 28(e); (3) that the payment of excessive commissions to brokers was not disclosed nor authorized in Lord Abbett Funds Rule 12b-1 Plan; (4) that Lord Abbett failed to properly evaluate the Lord Abbett Funds Rule 12b-1 Plan; (5) as a result of the Director Defendants' failure to properly evaluate the Lord Abbett Funds Rule 12b-1 Plan, all payments made pursuant to the Rule 12b-1 Plan were in violation of Section 12; (6) that the marketing of the Lord Abbett Funds to new investors harmed existing Lord Abbett Funds investors because fees charged to existing Lord Abbett Funds investors increased and caused the existing Lord Abbett Funds investors to pay such increases, and; (7) that the Director Defendants failure to fulfill their fiduciary duties to the existing Lord Abbett Funds shareholders enabled Lord Abbett to remove millions of dollars from the Lord Abbett Funds.

**COUNT ONE**

**Against Lord Abbett For Violations Of Section 34(b) Of The Investment Company Act On Behalf Of The Class**

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against Lord Abbett in their role as investment advisers to the Lord Abbett Funds.

50. Lord Abbett made false statements of material fact in registration statements and reports filed and disseminated pursuant to the Investment Company Act and omitted to state facts necessary to prevent the statements made therein, in light of the circumstances under which they were made, from being materially false and misleading. Lord Abbett failed to disclose the following: (1) that Lord Abbett permitted payments from fund assets of excessive commissions to brokers to induce them to push Lord Abbett Funds; (2) that such payments were a clear breach of Lord Abbett' fiduciary duties, violated Section 12b of the Investment Company Act, and were not protected by the safe harbor provisions of Section 28(e); (3) that the payment of excessive commissions to brokers was not disclosed nor authorized in Lord Abbett Funds Rule 12b-1 Plan; (4) that the Director Defendants failed to properly evaluate the Lord Abbett Funds Rule 12b-1 Plan; (5) as a result of the Director Defendants' failure to properly evaluate the Lord Abbett Funds Rule 12b-1 Plan, all payments made pursuant to the Rule 12b-1 Plan were in violation of Section 12; (6) that the marketing of the Lord Abbett Funds to new investors harmed existing Lord Abbett Funds investors because fees charged to existing Lord Abbett Funds investors increased and caused the existing Lord Abbett Funds investors to pay such increases; and (7) that

the Director Defendants failure to fulfill their fiduciary duties to the existing Lord Abbett Funds shareholders enabled Lord Abbett to remove millions of dollars from the Lord Abbett Funds.

51. By reason of the conduct described above, Lord Abbett violated Section 34(b) of the Investment Company Act.

52. As a direct, proximate and foreseeable result of Lord Abbett's violation of Section 34(b) of the Investment Company Act, Lord Abbett Funds investors have incurred damages.

53. Lord Abbett, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal. such materially adverse information.

**COUNT TWO**
**Against Lord Abbett Pursuant**
**To Section 36(b) Of The Investment Company Act**
**Derivatively On Behalf Of The Lord Abbett Funds**

54. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55. This claim for relief is brought pursuant to Section 36(b) of the Investment Company Act of 1940 against defendants.

56. Under Section 36(b) of the Investment Company Act, defendants shall be deemed to owe a fiduciary duty to plaintiff and other Class members with respect to the receipt of fees and compensation that defendants receive for services of a material nature.

57. Here, defendants have devised and implemented a scheme to obtain substantial fees and other income for themselves and their affiliates by improperly charging investors in the Lord Abbett Funds Rule 12b-1 marketing fees and by drawing on Lord Abbett Funds assets to make

undisclosed Soft Dollar payments and excessive commissions throughout the Class Period and in violation of their fiduciary duties to their customers, i.e., plaintiff and Class members.

58. Defendants have breached the fiduciary duties owed to plaintiff and other Class members by, among other things, devising this plan and scheme solely for its own benefit and by failing to reveal to them material facts which would allow them to make informed decisions about the true value and performance of the Lord Abbett Funds.

59. Plaintiff and other Class members have been injured as a result of defendants' breach of fiduciary duty and violation of Section 36(b) of the Investment Act of 1940.

**COUNT THREE**

**Against The Director Defendants As Control Persons Of Lord Abbett For Violation of Section 48(a) Of The Investment Company Act The Class And Derivatively On Behalf Of The Lord Abbett Funds**

60. Plaintiff repeats and realleges each and every allegation contained above and otherwise incorporates the allegations contained above.

61. This Count is brought pursuant to Section 48(a) of the Investment Company Act against the Director Defendants as control persons of Lord Abbett who caused Lord Abbett to commit the violations of the Investment Company Act alleged herein. It is appropriate to treat these defendants as a group for pleading purposes and to presume that the misconduct complained of herein is the collective action of the Director Defendants.

62. Lord Abbett are liable under Sections 34(b) of the Investment Company Act to the Class and under 36(b) of the Investment Company Act to the Lord Abbett Funds as set forth herein.

63. The Director Defendants were each "control persons" of Lord Abbett and caused the violations complained of herein by virtue of their positions of operational control and/or

authority over Lord Abbett. The Director Defendants directly and indirectly had the power and authority, and exercised the same, to cause Lord Abbett to engage in the wrongful conduct complained of herein.

64. Pursuant to Section 48(a) of the Investment Company Act, by reason of the foregoing, the Partner Defendants are liable to plaintiffs to the same, extent as are Lord Abbett for their primary violations of Sections 34(b) and 36(b) of the Investment Company Act.

**COUNT FOUR**

**Against Lord Abbett Under Section 215 Of The Investment Advisers Act For Violations Of Section 206 Of The Investment Advisers Act Derivatively On Behalf Of The Lord Abbett Funds**

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. This Count is based upon Section 215 of the Investment Advisers Act, 15 U.S.C. §80b-1.5.

67. Lord Abbett served as "investment advisers" to the Lord Abbett Funds and other members of the Class pursuant to the Investment Advisers Act.

68. As fiduciaries pursuant to the Investment Advisers Act, Lord Abbett was required to serve the Lord Abbett Funds in a manner in accordance with the federal fiduciary standards set forth in Section 206 of the Investment Advisers Act, 15 U.S.C. §80b-6, governing the conduct of Lord Abbett.

69. During the Class Period, Lord Abbett breached their fiduciary duties to the Lord Abbett Funds by engaging in a deceptive scheme, practice and course of conduct pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud upon the Lord Abbett Funds.

70. The Lord Abbett Funds are entitled to rescind their investment advisory contracts with Lord Abbett and recover all fees paid in connection with their enrollment pursuant to such agreements.

**COUNT FIVE**
**Against All Defendants For Breach of Fiduciary Duties**

71. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72. Plaintiff and the Class placed their trust and confidence in defendants to manage the assets they invested in the Lord Abbett Funds.

73. Plaintiff and the Class reasonably expected that defendants would honor their obligations to them by, among other things, observing the securities laws and honoring the representations made in the Lord Abbett Funds' prospectuses.

74. Lord Abbett and the Director defendants aided and abetted by the other Defendants who are co-conspirators, breached their fiduciary duties to the Plaintiff and the Class by violating the federal securities laws and breaching express and implied representations contained in the Lord Abbett Funds' prospectuses for the benefit of the Lord Abbett Funds and each of the other defendants.

75. Each of the defendants was an active participant in the breach of fiduciary duty who participated in the breach for the purpose of advancing their own interests. More specifically, defendants breached their fiduciary duties to the Class by: (1) charging the Lord Abbett Funds and Lord Abbett Funds investors improper Rule 12b-1 marketing fees; (2) making improper undisclosed payments of Soft Dollars; (3) making unauthorized use of "directed

brokerage" as a marketing tool; and (4) charging the Lord Abbett Funds for excessive and improper commission payments to brokers.

76. Plaintiff and the Class have been specially injured by defendants' wrongdoing. For example, those Class members who redeemed their shares during the Class Period received less than what they would have been entitled to had certain individuals not engaged in illegal market timing and late trading. Additionally, certain members of the Class (i.e., those who purchased their mutual fund shares legally), were treated differently than those purchasers that were market timers and/or late traders.

77. Lord Abbett and the Director Defendants, aided and abetted by the other defendants who are also co-conspirators, acted in bad-faith, for personal gain and in furtherance of his or her own financial advantage in connection with the wrongful conduct complained of in this complaint.

78. As a direct and proximate result of the defendants' foregoing breaches of fiduciary duties, Plaintiff and the members of the Class have suffered damages.

79. Defendants, as aiders, abettors, and co-conspirators, are each jointly and severally liable for an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and appointing Plaintiff as lead plaintiff and her counsel as lead counsel for the Class and certifying her as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an, amount to be proven at trial, including interest thereon;

C. Awarding punitive damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D. Awarding the Lord Abbett Funds rescission of their contracts with Lord Abbett, including recovery of all fees which would otherwise apply, and recovery of all fees paid to Lord Abbett;

E. Ordering an accounting of all Lord Abbett Fund related fees, commissions, and Soft Dollar payments;

F. Ordering restitution of all unlawfully obtained fees and charges;

G. Awarding such other and further relief as this Court may deem just and proper, including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the defendants' assets to assure that Plaintiff and the Class have an effective remedy;

H. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, and;

I. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2004

**LITE DEPALMA GREENBERG & RIVAS, LLC**

By: Joseph J. DePalma /s/

Joseph J. DePalma, Esq. (JD-7697)
Katrina Blumenkrants (KB-9620)
Two Gateway Center, 12th
Newark, New Jersey 07102
Telephone (973) 623-3000

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz, Esq.
Richard A. Maniskas, Esq.
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

**Attorneys for Plaintiff**

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by her attorneys, hereby certifies that to the best of her knowledge, the matter in controversy is related to White v. Lord Abbett & Co., LLC, et al., Civil Action No. 04-559. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated: March 4, 2004

**LITE DEPALMA GREENBERG & RIVAS, LLC**

By: /s/ Joseph J. DePalma

Joseph J. DePalma (JD-7697)
Katrina Blumenkrants (KB-9620)
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 623-3000

**Attorneys for Plaintiff**